Members of the Court, I'm James Endicott from Texas, representing Ms. Cerda today. Ms. Cerda was removed from federal service in May of 2005 under Chapter 43, a performance issue. She was rated in her rating that caused her to be removed as unacceptable in quality enforcement. Her prior rating had been an effective rating, and she had been rated down two levels from her prior earlier rating. I have detailed in my brief a number of the technical parts of this particular case, but I would like to just briefly this morning address five specific points. First, there seemed to be a question as to whether or not Ms. Cerda, through her union steward representative below, was challenging the validity of the OPM approval of the performance system. The administrative judge stated in her decision, which is in page 9 of the appendix, that Ms. Cerda did not raise those issues below, but as seen in page 72, prior to her decision, the union steward on behalf of Ms. Cerda clearly challenged the validity of the performance standards and also the OPM approval of the system. The system that OPM had initially approved had five levels of rating, and then it changed. It was three, and then it went to five, and for the reasons stated in the brief, we believe very clearly that the administrative judge below dismissed the point that Ms. Cerda was trying to challenge whether OPM had approved this system. Mr. Nadell, one question I just want to put on here. Complaining about, is the complaint here about the lack of approval with respect to the original performance plan or with respect to the performance improvement plan that came into effect later? Well, Judge, we're complaining about both, really. The system, when the rating, when the plan changed, we believe that it did not have OPM approval, and the Department of Labor was required to go back in 2004 to have their new system, if you will, approved. But when you say their new system, you talk about the performance improvement plan that was crafted for Ms. Cerda, because usually, and correct me if I'm wrong, but usually when an employee is in a situation where they're not performing up to required standards, the agency will sometimes put them on a performance improvement plan. And are you saying that it's that that didn't have the proper OPM approval, or are you saying it was the original performance standard? Because I wasn't aware that if the agency crafts a specific performance improvement plan, it has to have approval. No, Your Honor, you're absolutely correct. That is not, would not be OPM level. That PIP, the performance plan, is clearly crafted by the agency. For a specific situation. Yes. So this regulation is for OPM, and in this case, we would suggest also the union approval. Getting to that point where this particular evaluation system and rating sort of fell apart, in our opinion, was at the PIP level, we had a sort of emergence of some new standards that had not previously existed for Ms. Serda. Is it your position that those standards require OPM approval? No, Your Honor. What standards do you contest are invalid because they lack OPM approval? Well, we are saying that the system at the time Ms. Serda was rated, the system itself, the entire system, was invalid because the department had not gone back to OPM to recertify, if you will, their chain system. Well, on what basis was the agency required to go back to OPM? Well, Your Honor, my understanding is that the OPM's authority to certify a rating system is not in perpetuity. If there is a significant change in the system that the agency wishes to use, I believe they are required to go back to OPM and say, we've changed our system, we'd like you to recertify it. But, of course, if the performance standards are consistent with the system that had been previously approved, and in this case there was OPM approval of a system in, I believe, 1997. That's correct, Your Honor. If the performance standards are consistent with that OPM approved system, then recertification would not be necessary, would it? Well, sir, I believe in this case, again, it's my understanding that they should have gone back to OPM to indicate they were using a new system. I understand that's what you're saying, but my question is why? Well, Judge, I think the ultimate issue here really is the standards. I think the law is pretty clear at the Board, and I believe at this Court, that however we get there, if the employee is all noticed, then at that point we're going to look more at the substance than necessarily the regulatory scheme behind it. And I think that's, again, we believe that in this case, the Department of Labor at the last minute just invented new standards that had not previously been there. And that, I think, is ultimately the dilemma that Ms. Serder was facing. So the real complaint here is with respect to her original evaluation that led her to be put on a performance improvement plan. Your Honor, the original evaluation, we believe, was faulty because of the system issue. That's what I'm saying. Yes. Regardless of, you know, that's one issue. And then the actual PIP that she was put on, we believe, is another issue because the agency just sort of created some standards out of thin air in our opinion. When we finally get to the PIP, the PIP is supposed to provide meets standards and needs improvement standards. And in this case, for the first time, Ms. Serder was notified that to needs improvement level, she would have to be right 75 to 85 percent of the time. We would suggest that's sort of vague. Is it 75 percent or is it 85 percent? Has she been at the 75 percent level or did she need to be at the 85 percent level? Well, why is it vague simply because it's stated in a range rather than a specific number? Well, Your Honor, the meets standard would appear to be an absolute standard. To get the meets, you have to be at 100 percent at all times. Then to get to needs improvement, it's 75 to 85, about 95 or 90. But that simply sets forth a range. It's not that it's vague about it. It just gives a range of values that should be taken into account. And why is that not proper? Well, Your Honor, I think from the employee point of view, it doesn't properly put them on notice ultimately what they're expected to do. Well, Your Honor, I guess I would say that's correct. If we were from 75 to 85, but again, that just sort of came up out of the blue. There were standards like these had to be investigated and set, well documented. What's investigated and set? This is where the issue of the missing form came up. When the agency redid their system in 2004, they developed a new rating form, 384, which is at page 116 of your appendix. And in this case, the agency just kept on using an obsolete form as just one comparison as to investigatively sound. The new proper rating form and standards indicated that investigations must be logical and well planned and that conclusions must be based upon substantial evidence. I would suggest that that is materially different than saying investigatively sound. The agency, I assume, changed their form to make it better and more logical and to put the employee on better notice of what the standards were. In this case, she was not rated on those proper standards. At this time, I'll address. Thank you. Your Honor, I would just like to make four quick points. And to start out, I'd like to state that the factual underpinnings of the agency's decision, the removal decision, are not at issue, specifically with regards to the deficiencies in the petitioner's performance and the board's findings with regards to whether or not she was allowed to participate in their performance improvement program during that process. So that being said, we have to look at whether or not the procedures were proper in this case. And standard, when you're evaluating agency procedures, is harmful error. So in this case, the court would find that there were a specific deficiency with the procedure. The next question is, was there any harmful error from that deficiency? And the respondent's position is, no, there was no harmful error in that case. First, with regards to whether or not the OPM system was properly approved or was properly raised below. And again, we go back to a harmful error standard. It's clear in the record, record testimony of the resources officer. And the document itself is in the record that the performance standard, performance system, was properly approved on February 12, 1997. And in fact, the petitioner's own brief acknowledges that. And in regards to, you know, I'd just like to clarify, there's confusion between the standards of having a performance appraisal system approved versus a performance appraisal program. By statute, OPM has to approve the agency's performance appraisal system. And what that is, it's an umbrella system that grants discretion to the agency to come up with its own program. And only the system by statute is required to be approved by OPM. To what extent can the agency deviate from the program that is described in seeking for approval of its system in the first place? Yes, Your Honor. The first agency does, by regulation, have discretion to deviate within the umbrella. So in this case, the standard performance appraisal system gave eight choices of summary rating levels that the agency could choose from. In this case, they chose a summary rating level pattern of five rates. And there's no contention in this case that that was incorrect. And the agency is also allowed to allow discretion in choosing how many critical elements under which they will evaluate the petitioner or the agency's employees. In this case, they chose three, and that was perfectly within their discretion. I believe the standard was they had to choose at least two critical elements. So again, the agency had discretion to change its program, which it did on October 1st, 2004. And by regulation and statute, that's perfectly fine for them to do that. So it just needs to be clearly distinguished in this case what's required of the agency with regards to the performance appraisal system versus a performance appraisal program. And with regards, Your Honors, to the standards at issue, first, as the court alluded to in its questioning of the petitioner, the agency has gone above and beyond what is required in setting its performance appraisal standards. This court has stated in Wilson v. Department of Health and Human Services that the agency does not have to get down to numerical specificity, which, in fact, they did in this case. My stating petitioner had to reach a range of 75 to 85 percent of her work product being acceptable to the agency. And the petitioner's supervisor is allowed a certain amount of subjectivity in assessing those standards by statute in this court's opinion. And finally, Your Honor, on the issue of the incorrect evaluation form, again, even if the agency was not supposed to, was supposed to use a different evaluation form, the standard is harmful error. And there was no harmful error because we have testimony from the human resources officer and the petitioner herself acknowledged in her hearing transcript that failure of one critical element, even on the form that the petitioner argued she should have been evaluated for under, failure to meet the standards of one critical element would have resulted or would have been justified in removal in this case. And, Your Honors, for those reasons and the reasons we stated in the brief, in our brief, we expect that the rest of the court has burned down some pieces of that. Very briefly, thank you. Harmful error. We, again, believe that harmful error is there. The form 384, in that case, the agency really had five critical elements. And we believe by using the incorrect form, it diluted Mrs. Cerda's performance relatively. She had five critical elements. Had she succeeded on four of the five relatively, she would have performed better, we believe. Also, the PIP itself is supposed to guide the employee under the union agreement to the relative importance of various parts of her performance, with the understanding that not all parts are of equal significance. We believe that that is important. Also, the PIP is to direct the employee to an effective level, not a needs improvement level. We believe collectively in this case that Mrs. Cerda was not properly aware of what her requirements were, and that was part of the issue of her being able to achieve sort of a moving target as it changed on her from what she believed. Her rating prior to this rating that started the PIP was a successful rating with meets in all areas. We would ask that this case be remanded back to the American System Board for further consideration of the issues that we have raised. Thank you. Thank you.